## In re NAEGELE.

### (No. 5,500.)

(Submitted March 10, 1924. Decided March 15, 1924.)

[224 Pac. 269.]

*Habeas Corpus—Banks and Banking—Criminal Law—Receiving Deposits Knowing Bank to be Insolvent—Statute—Invalidity—Repeal by Implication.*

Statutes—Repeal by Implication.

1. While repeal by implication is not favored in the law and it is the duty of courts to reconcile conflicting statutes and make them operative if possible, yet where a later statute is so much in conflict with an earlier one as to render it impossible for both to stand, courts will declare a repeal by implication.

Same—Act Amending Repealed Section Void.

2. An Act amending a section of an Act which has previously been repealed is void.

Banks and Banking—Receiving Deposits Knowing Bank to be Insolvent—Statute—Invalidity.

3. *Held,* on *habeas corpus,* that section 986, Penal Code of 1895, making it a crime for an officer of a bank to receive deposits knowing the bank to be insolvent, was impliedly repealed by section 5, Substitute for Senate Bill No. 887, Laws of 1899, page 111, the two Acts being so inconsistent as to render it impossible to reconcile them; that therefore the amendment of section 986 after such repeal, attempted by Chapter 84, Laws of 1907, which amended section was brought forward into the Revised Codes of 1921 as section 11443, was void, and hence ·the indictment, based thereon, did not state a public offense, entitling complainant to his release from custody.

APPLICATION by Fred Naegele for a writ of *habeas corpus* against James M. Barnes, sheriff of Lewis and Clark County. Complainant discharged.

*Messrs. Walsh & Nagle* and *Messrs. Gunn, Rasch & Hall,* for Complainant, submitted a brief; *Mr. J. A. Walsh* and *Mr. M. S. Gunn* argued the cause orally.

*Mr. Jos. R. Wine,* County Auditor of Lewis and Clark County, for the State, argued the cause orally.

---

2. Re-enactment of provisions of repealed statute by reference thereto, see notes in 17 Ann. Cas. 437.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original proceeding in *habeas corpus*. The petition is addressed to Mr. Chief Justice Callaway. Upon its filing and presentation an order was duly made and entered by him on March 5, 1924, directing that a writ of *habeas corpus* issue to James M. Barnes, as sheriff of Lewis and Clark county, requiring the latter to have the body of the petitioner, Fred Naegele, before this court on March 10, 1924. The writ was issued accordingly on the date of the order, and the cause was heard by the court, pursuant to the order, upon the petition, the sheriff's return and the petitioner's objections to the return. There are no disputed questions of fact.

By indictment returned by the grand jury of Lewis and Clark county, the petitioner and others are charged with the crime of felony, in that on the first day of May, 1923, they, being all the directors of the Banking Corporation of Montana, "did willfully, unlawfully and feloniously receive on deposit and accept and permit and connive at the receiving and accepting on deposit from one John T. Smith, a certain sum of money and paper circulating as money, to-wit, currency, to the amount of one hundred dollars ($100), * * * lawful money of the United States of America, * * * each of them then and there knowing, or having reason to know, of such unsafeness and insolvency of * * * the Banking Corporation of Montana, * * * contrary to the form, force and effect of the statute," *etc.*

The petition recites, among other things, that the petitioner is unlawfully restrained of his liberty by the above-named sheriff, in that the indictment returned by the grand jury on January 21, 1924, purporting to charge the petitioner and others therein named with the crime of felony, is predicated upon section 11443 of the Revised Codes of 1921, which had been repealed long prior to May 1, 1923, the date of the alleged commission of the offense charged in the indictment. The return of the sheriff admits that at the time of the issuance and service of the writ he held the petitioner in custody as a

prisoner, but justifies himself by reason of a warrant issued by the district court of Lewis and Clark county for petitioner's arrest. Further, it is admitted that the petitioner, jointly with others, is by indictment charged with a violation of the banking laws of the state of Montana, under section 11443 of the Revised Codes of 1921, as the same existed at the time of the acts complained of and at the time of the presentation and filing of the indictment and at the time of the issuance of the warrant for petitioner's arrest. It is denied that this law was repealed on May 1, 1923, or at any other time.

The determinative question is whether section 11443 of the Revised Codes of 1921 was a valid and subsisting law on the [1–3] date of the offense alleged by the indictment. That section reads: "No bank, banking house, exchange broker, individual banker, deposit office or firm, company, corporation, or party engaged in the banking, broker, exchange, loan or deposit business shall accept or receive on deposit, or for safe-keeping, or to loan, with or without interest from any person, any money or any bills, notes or any paper circulating as money, or any notes, drafts, bills of exchange, bank checks or other commercial paper, for safe-keeping or for collection, when · such bank, banking house, exchange broker, individual banker, deposit office, firm, company, corporation, or party is unsafe and insolvent. If any such bank, banking house, exchange broker, individual banker, deposit office, or firm, company, corporation or party shall receive or accept on deposit, or for safe-keeping or to loan, with or without interest from any persons, any money or any bills of exchange, bank checks or other commercial paper, drafts, notes or other paper circulating as money, or any notes, for safe-keeping, or for collection, when unsafe or insolvent, any officer, director, cashier, manager, principal, agent, clerk, party or managing party, thereof, knowing or having reason to know, of any such unsafeness or insolvency, who shall knowingly receive or accept, be accessory to, or permit or connive at, or receive or accept on deposit therein or thereby, any such deposits, money or property as aforesaid,

shall be guilty of a felony and shall be punished by imprison-
ment in the state penitentiary not less than one year or more
than twenty years.''

The history of this legislation is conclusive with respect to
its validity. By section 986 of the Penal Code of 1895 it was
provided: ''Every officer, agent, teller or clerk of any bank,
and every individual banker or agent, teller or clerk of any
individual banker, who receives any deposits, knowing that
such bank or association or banker is insolvent, is guilty of a
felony.'' And there was no other provision in the Codes of
1895 relative to the acceptance of deposits while a bank was
in an insolvent condition. In 1899 an Act was passed and
approved (substitute for Senate Bill No. 87, Laws of 1899,
pp. 111, 112), which was carried forward into the Codes of
1907 as section 4007, reading as follows: ''Whenever any bank-
ing corporation, trust deposit and security company or savings
banks organized under the laws of this state shall be insolvent
or impaired condition in the manner described and set forth
in section 4004 (2) of this Act, such banking corporation,
trust deposit and security company or savings bank shall not
accept or receive on deposit any money, bank bills or notes,
United States treasury notes or currency, or other notes, bills
or drafts, circulating as money or currency, or transact any
other business in connection with its operations, except as
trustee for the depositors and parties transacting business with
them, and it or they shall keep all such deposits of money,
bills or notes, or United States treasury notes or currency,
or other notes, bills or drafts, circulating as money or currency,
separate and apart from the general assets of the bank, from
and after the date such notice is given to its officers and stock-
holders, as set forth in section 4004 (2), of this Act, and which
trust deposits shall be kept separate and apart from the gen-
eral assets of the bank until such impairment or insolvency
has been made good, when such deposits received in 'trust'
may be transferred to the general assets of the bank on and
by written consent of the state examiner; and further pro-

vided that, in the event of such impairment or insolvency be
not made good or removed within the period stated by the
notice required as set forth in section 4004 (2), of this Act,
then any and all such 'trust deposits' shall be returned to the
depositors making them; and further provided, that any officer,
director, cashier, manager, member, partner or managing part-
ner thereof who shall knowingly accept or receive, be accessory
to or permit or connive at the receiving or accepting of such
trust deposits, except in the manner hereinbefore set forth in
this section, shall be deemed guilty of a felony, and upon con-
viction thereof, shall be punished by a fine not exceeding ten
thousand dollars, or by imprisonment in the State Penitentiary
not exceeding five years, or by both fine and imprisonment as
aforesaid.''

By Chapter 84 of the Laws of 1907 attempt was made spe-
cifically to amend section 986 of the Penal Code of 1895, by an
Act entitled ''An Act relating to banking, brokerage, exchange,
loan and deposit business and amending section 986 of the
Penal Code of the State of Montana,'' which Act is now sec-
tion 11443 of the Revised Codes of 1921, upon which the in-
dictment against the petitioner is based.

Again, by Chapter 89 of the Laws of 1915, a revision of all
the banking laws of the state was enacted, repealing Acts and
parts of Acts in conflict therewith, wherein, by section 62
thereof, the language employed is substantially the same as
the Act of 1899, and the punishment prescribed is identical.
This Act of 1915 was carried forward into the Revised Codes
of 1921 as section 6081 thereof.

Section 6081, Revised Codes of 1921, was again amended by
Chapter 90 of the Laws of 1923, approved March 6, 1923,
whereby the provisions of the Act of 1915 were substantially
re-enacted, including provision for the same penalty. Had the
indictment in the petitioner's case been based on section 6081,
Revised Codes of 1921, as amended by the Act of 1923, our
conclusion respecting its sufficiency might have been wholly

different. However, since that section is not involved in this proceeding, we need express no opinion concerning it.

The statutes other than section 986 of the Penal Code of 1895, the Act of 1899 and the Act of 1907 are not necessary to be considered in determining the merits of the question presented in the instant case; however, the course of legislation covering the subject involved is illuminating.

The necessary inquiry is whether the Act of 1899 repealed section 986 of the Penal Code of 1895 by necessary implication or otherwise. If so, at the time of the attempted amendment thereof in 1907 there was no "section 986 of the Penal Code of the State of Montana" existing to be amended, and the attempted amendment was therefore void. As a necessary consequence, section 11443 of the Revised Codes of 1921, being the Act of 1907 brought forward under which the petitioner was indicted, is without validity. Although the Act of 1899 does not contain a repealing clause, yet its provisions are so inconsistent with the provisions of section 986 of the Penal Code of 1895 as to inevitably work a repeal thereof by implication. It will be noted that by such section 986, as well as by the attempted amendment of 1907, it was made a crime to receive a deposit in a bank known to be insolvent without reference to what was done with the deposit; whereas, by the Act of 1899, although the bank may be insolvent deposits may be received provided they are kept separate and apart from the general assets of the bank and held in the manner prescribed. The inconsistency of section 986 and the Act of 1899 is demonstrable beyond any doubt. In the first instance any "officer, agent, teller or clerk of any bank, and every individual banker or agent, teller or clerk of any individual banker," charged under the provisions of section 986, would be guilty of a felony upon proof alone of the receipt of a deposit, knowing the bank to be insolvent; whereas, the same persons are absolved from crime under the Act of 1899, even though the bank be in an insolvent condition, where the deposits received are kept and held in trust for the depositor's benefit. Again, the penalty

under section 986 is for a felony, *i. e.*, five years (sec. 18, Penal
Code of 1895), whereas, by the Act of 1899 the punishment
to be imposed for the crime as there defined is "a fine not ex-
ceeding ten thousand dollars, or by imprisonment in the state
penitentiary not exceeding five years, or by both fine and im-
prisonment as aforesaid." By the attempted amendment of
1907 the mere receipt of money, knowing the bank to be in-
solvent, constitutes the crime, as in section 986; but the punish-
ment is definitely prescribed in the Act of 1907 at imprison-
ment in the state penitentiary for not less than one nor more
than twenty years. This attempted amendment of 1907, as
above stated, is now section 11443, Revised Codes of 1921,
under which the petitioner was indicted.

The repeal of a statute by implication is not favored in the
law, and it is our duty to reconcile these statutes and make
them operative in accordance with legislative intent, if possible.
(*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309;
*State* v. *Bowker,* 63 Mont. 1, 205 Pac. 961.) Every presump-
tion must be indulged in favor of the validity of section 11443
of the Revised Codes of 1921, so as to make it operative, if
feasible. (*Thomas* v. *Smith,* 1 Mont. 21; *State* v. *Bowker,*
*supra.*) But where, as here, the two legislative enactments
are so much in conflict as to render it impossible for both to
stand, the courts should not hesitate in declaring a repeal by
implication. As was well stated by Mr. Chief Justice Callaway
in *State* v. *Miller,* 69 Mont. 1, 220 Pac. 97: "While repeals by
implication are not favored, when two legislative enactments
relating to the same subject matter are in conflict, and cannot
be harmonized, the act last enacted controls,"—citing *United
States* v. *196 Buffalo Robes,* 1 Mont. 489; *State ex rel. Wynne*
v. *Quinn,* 40 Mont. 472, 107 Pac. 506.

Mr. Sutherland, in his work on Statutory Construction by
Lewis (2d ed., sec. 247), in dealing with the rules governing
repeals of legislative enactments by implication, says: "Such
repeals are recognized as intended by the legislature, and its
intention to repeal is ascertained as the legislative intent is

ascertained in other respects, when not expressly declared, by construction. An implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier Act. In such case the later law prevails as the last expression of the legislative will; therefore, the former law is constructively repealed, since it cannot be supposed that the lawmaking power intends to enact or continue in force laws which are contradictions. The repugnancy being ascertained, the later Act or provision in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it. Subsequent legislation repeals previous inconsistent legislation, whether it expressly declares such repeal or not.''

Thus, although there is not contained in the Act of 1899 a special or general repealing clause, yet it must be held that section 986 was by implication repealed by the later repugnant Act upon the same subject. The Act of 1899 having had the effect of nullifying the provisions of section 986 of the Penal Code of 1895, in 1907, at the time of the attempted amendment of section 986 by Chapter 84 of the Laws of 1907, there existed no section 986 of the Penal Code of 1895 to be amended. The title of Chapter 84 of the Laws of 1907 indicates a purpose to amend ''section 986 of the Penal Code of the State of Montana,'' and in the body of the Act it is provided ''that section 986 of the Penal Code of the State of Montana be, and the same is hereby amended to read as follows,'' etc. Thus, a clear intention is manifest to amend section 986, which was an impossibility, it having already been nullified by the Act of 1899. The attempted amendment of section 986 was ineffectual for any purpose. Life may not thus be breathed into a dead statute. Its provisions could have been re-enacted, but it was not properly the subject of amendment. It is settled by our statute, consistent with the general rule of statutory construction, that an Act amending a section of an Act repealed is void. (Sec. 98, Rev. Codes 1921; Lewis' Sutherland on Statutory Construction, sec. 233.)

As the indictment does not state a public offense, it is wholly insufficient. Consequently the petitioner, being held in custody as a prisoner on a warrant predicated thereon, is unlawfully restrained of his liberty. The petitioner did not commit, and could not have committed, the offense charged in the indictment. (*In re Mo,* 62 Mont. 137, 204 Pac. 175.)

It is ordered that the petitioner be released and discharged from custody forthwith.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.