No. 97-594

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 276

CARIE M. ROSS,

Plaintiff and Appellant,

v.

CITY OF GREAT FALLS,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth Neill, Judge presiding.

COUNSEL OF RECORD:


For Appellant:


Frederick F. Sherwood; Reynolds, Motl & Sherwood, Helena, Montana


For Respondent:


Richard Larson, J. Dennis Moreen; Chronister, Moreen & Larson,

Helena, Montana


Submitted on Briefs: August 20, 1998


Decided: November 12, 1998

Filed:


_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Carie M. Ross (Ross) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on its order granting the City of Great Falls' (the City) motion for summary judgment and denying her motion for partial summary judgment on the issue of liability in her age discrimination action. We affirm.**

**¶2. We address the following dispositive issues:**

**¶3. 1. Did the District Court err in concluding that § 7-32-4112(1), MCA (1989), was not impliedly repealed by the enactment of the Montana Human Rights Act and the Governmental Code of Fair Practices?**

**¶4. 2. Did the District Court err in concluding that, even assuming § 7-32-4112(1), MCA (1989), is unconstitutional, the City cannot be held liable for relying on the statute and in granting the City summary judgment on that basis?**

BACKGROUND

**¶5. In June of 1991, Ross mailed a form letter to a number of police departments in Montana, including the Great Falls Police Department, requesting an application for a police officer position or other entry level position that would lead to a police officer position. In response, she received an application form from the City and a list of the qualifications for a police officer position. Among other things, the qualifications required that the applicant be between the ages of 18 and 35, as provided in § 7-32-4112(1), MCA (1989). Ross was 37 years old at the time. She did not complete the application and return it to the City; nor did she formally apply to any of the other jurisdictions to which she sent letters of inquiry. She did apply for other police officer positions advertised in the newspaper or via Job Service, but was not offered any of those positions.**

**¶6. Ross filed a complaint with the Montana Human Rights Commission (MHRC) in**

October of 1991, alleging that the City had discriminated against her on the basis of her age. The MHRC investigator ultimately recommended a finding of reasonable cause to believe wrongful age discrimination had occurred and the MHRC issued a Notice of Right to Sue in September of 1993.

¶7. Ross subsequently sued the City, alleging age discrimination in violation of both the Montana Human Rights Act (MHRA), Title 49, Chapter 2, MCA, and the Governmental Code of Fair Practices (GCFP), Title 49, Chapter 3, MCA. She alleged that she attempted to apply for positions with the Great Falls Police Department and was told she could not do so because of her age. She also alleged that she had experience as a law enforcement officer and that she "otherwise met the qualifications" for the positions. Ross' complaint further asserted that § 7-32-4112 (1), MCA (1989), had been impliedly repealed or, alternatively, that it was unconstitutional.

¶8. The City filed its answer, conducted discovery, and moved for summary judgment. Ross subsequently filed a cross-motion for partial summary judgment on the issue of liability. The District Court granted the City's motion, denied Ross' motion and entered judgment accordingly. Ross appeals.

## STANDARD OF REVIEW

¶9. "Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." Ash Grove Cement Co. v. Jefferson County (1997), 283 Mont. 486, 491, 943 P.2d 85, 88; Rule 56(c), M.R.Civ. P. We review a district court's grant of summary judgment *de novo*, applying the same Rule 56(c), M.R.Civ.P., criteria as the district court. Ash Grove Cement Co., 283 Mont. at 491, 943 P.2d at 88 (citation omitted).

¶10. In the usual summary judgment case, we first determine whether "the moving party met its burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law." Ash Grove Cement Co., 283 Mont. at 491, 943 P.2d at 88 (citation omitted). In the present case, however, the parties agree on the material facts. As a result, the question before us is whether the District Court correctly concluded that the City was entitled to judgment as a matter of law. We review a district court's conclusions of law to determine whether the

interpretation of the law is correct. <u>Ash Grove Cement Co.</u>, 283 Mont. at 491-92, 943 P.2d at 89 (citation omitted).

## DISCUSSION

**¶11. 1. Did the District Court err in concluding that § 7-32-4112(1), MCA (1989), was not impliedly repealed by the enactment of the MHRA and the GCFP?**

**¶12. Before turning to the issue at hand, it is appropriate to set forth the legal backdrop relating to this discrimination action. In her complaint, Ross asserted that the inclusion of a maximum age restriction in the City's police officer qualification criteria constituted age discrimination in violation of the provisions of the MHRA and the GCFP. The MHRA, enacted in 1974, prohibits refusing employment to a person on the basis of age when the reasonable demands of the position do not require an age distinction. Section 49-2-303(1)(a), MCA. This provision of the MHRA is applicable to all employers, public and private, except for certain nonprofit organizations. Sections 49-2-303(1)(a) and 49-2-101(11), MCA.**

**¶13. The GCFP was enacted in 1975 and is applicable specifically to state and local governmental entities. It requires all such entities to "recruit, appoint, assign, train, evaluate, and promote personnel on the basis of merit and qualifications without regard to . . . age . . . ." Section 49-3-201(1), MCA. The GCFP provides several exceptions to this requirement, including allowing a governmental entity to differentiate based on age when based on a bona fide occupational qualification reasonably necessary to the operation of the entity's business or where the differentiation is based on reasonable factors other than age. Section 49-3-103(1)(a), MCA.**

**¶14. The Montana Legislature also has enacted statutory criteria governing the qualifications of all city police officers in Montana. At the time Ross sent her inquiry letter to the Great Falls Police Department, those statutory qualifications were as follows:**

(1) The members of the police department on the active list of any city at the time of their appointment under this part may not be less than 18 years of age or more than 35 years of age, but this restriction does not apply to any member of any police department as of July 2, 1973, to honorably discharged persons who served in the armed forces of the United

States in time of war, providing such time of service is not less than 3 months, or to applicants for reinstatement under 7-32-4110.

(2) A police officer must be a citizen of the United States and meet the minimum qualifying standards for employment promulgated by the board of crime control.

Section 7-32-4112, MCA (1989).

**¶15. In its motion for summary judgment, the City argued that the § 7-32-4112(1), MCA, age restriction was a statutory requirement which the City was bound to apply pursuant to § 7-1-113(1), MCA, and, as a result, that it could not be found liable in a discrimination action for merely following state law. Ross responded by arguing that the City could not rely on § 7-32-4112(1), MCA, to justify the age restriction because that portion of the statute had been impliedly repealed by the enactment of the MHRA and the GCFP. The District Court concluded that the maximum age restriction provision of § 7-32-4112(1), MCA, had not been repealed because the Legislature had neither expressly repealed, nor manifested an intent to impliedly repeal, the statute when it enacted the MHRA and the GCFP. Ross contends that the District Court erred in so concluding.**

**¶16. A statute may be repealed by a legislative enactment which expressly provides that the earlier statute is repealed. Alternatively, a statute may be impliedly repealed where a subsequent legislative enactment is clearly and irreconcilably inconsistent with the earlier statute. See, e.g., Trustees, Carbon Cty. Sch. v. Spivey (1991), 247 Mont. 33, 36, 805 P.2d 61, 63; W.R. Grace & Co. v. Dept. of Revenue (1989), 238 Mont. 439, 450, 779 P.2d 470, 476. It is undisputed in this case that neither the MHRA nor the GCFP expressly repealed the maximum age restriction in § 7-32-4112 (1), MCA. Thus, if these acts repealed that portion of § 7-32-4112, MCA, at all, they must have done so by implication.**

**¶17. A number of well-established principles guide our analysis of whether a statute has been impliedly repealed. First and foremost, the repeal of a statute by implication has never been favored in Montana. See, e.g., W.R. Grace & Co., 238 Mont. at 450, 779 P.2d at 476; United States v. 196 Buffalo Robes (1872), 1 Mont. 489, 495. The Montana Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject and, as a result, it is further presumed**

that the Legislature "does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable." London Guaranty & Accident Co. v. Industrial Acc. Board (1928), 82 Mont. 304, 310, 266 P. 1103, 1105; see also Holly v. Preuss (1977), 172 Mont. 422, 426, 564 P.2d 1303, 1305-06; Fletcher v. Paige (1950), 124 Mont. 114, 119, 220 P.2d 484, 486-87.

¶18. In addition to being plainly and irreconcilably in conflict with each other, the two statutes must relate to the same subject matter and have the same object in view in order for the later statute to impliedly repeal the earlier. Johnson v. Marias River Elec. Co-op., Inc. (1984), 211 Mont. 518, 523-24, 687 P.2d 668, 671. In that regard, however, it is well-established that

"a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal."

Holly, 172 Mont. at 425-26, 564 P.2d at 1305 (quoting State v. Board of Examiners of State (1948), 121 Mont. 402, 417, 194 P.2d 633, 641); see also § 1-2-102, MCA; Spivey, 247 Mont. at 36, 805 P.2d at 63.

¶19. Finally, the rules of statutory construction require us to reconcile statutes if it is possible to do so in a manner consistent with legislative intent. An implied repeal will result only where the terms and necessary operation of a later statute cannot be harmonized with the terms and effect of an earlier statute. Fletcher, 124 Mont. at 119, 220 P.2d at 487; London Guaranty & Accident Co., 82 Mont. at 310, 266 P. at 1105.

¶20. Applying these principles governing implied repeal to the present case, we observe that the MHRA and the GCFP were enacted in 1974 and 1975, respectively, and are general legislative enactments on the subject of discrimination, certain aspects of which concern employment. Section 7-32-4112, MCA (1989), is a statute dealing specifically with the employment of city police officers and the qualifications necessary for such employment. The statutory city police officer qualification criteria contained in § 7-32-4112, MCA (1989), and its predecessor statutes have included

maximum age limitations continuously since 1907. Thus, § 7-32-4112, MCA (1989), is a prior specific statute which will prevail over the provisions of the MHRA and the GCFP unless the statutes are manifestly repugnant to--and irreconcilable with--each other. Holly, 172 Mont. at 425-26, 564 P.2d at 1305; State v. Board of County Com'rs (1938), 106 Mont. 251, 256, 76 P.2d 648, 651.

¶21. Both the MHRA and the GCFP have as one of their objects the prohibition of age discrimination in employment. See §§ 49-2-303(1)(a) and 49-3-201(1), MCA. They both limit application of the general prohibition against age discrimination, however, to situations where the reasonable demands of the employment do not justify an age restriction or age is not a bona fide, reasonably necessary occupational qualification. See §§ 49-2-303(1)(a) and 49-3-103(1)(a), MCA. These limitations clearly manifest legislative intent to permit age restrictions in certain employment situations. Thus, although the maximum age restriction in § 7-32-4112(1), MCA, is contrary to the general prohibition against age discrimination in employment set forth in the MHRA and the GCFP, the statutes may be harmonized by viewing § 7-32-4112(1), MCA, as a statutory limitation on the age discrimination prohibition applicable only to municipal police officers and, thereby, allowed by the express provisions of the MHRA and the GCFP. If harmonized in this manner, § 7-32-4112 (1), MCA, and the MHRA and GCFP are not irreconcilably repugnant to each other.

¶22. Moreover, we conclude that the Legislature's amendments to the statutory predecessor of § 7-32-4112, MCA, both concurrent to enactment of the MHRA and subsequent to enactment of the MHRA and the GCFP, further establish the Legislature's clear intent to maintain the age restriction for police officers as an exception to the general statutory prohibitions against age discrimination in employment. Prior to the enactment of the MHRA and the GCFP, the Montana Code included two statutes containing age restrictions in the qualifications of city police officers. Section 11-1814, RCM (1947), provided that all members of city police departments must be between 21 and 40 years of age at the time of their appointment to the department, while § 11-1817, RCM (1947), provided that members of a police department on the active list of any city must be between 18 and 35 years of age at the time of appointment. In 1974, the same year the MHRA was enacted, the Legislature amended § 11-1814, RCM (1947), by changing the city police officer age restrictions in that statute to not "less than twenty (20) years of age nor more than forty (40) years of age" and deleting a mandatory retirement provision. See 1974 Mont. Laws Ch. 335, Sec. 12.

¶23. Sections 11-1814 and 11-1817, RCM (1947), subsequently were combined, including both age restrictions, and recodified at § 7-32-4112, MCA (1978). The following year, the Legislature amended § 7-32-4112, MCA, by deleting one set of age restrictions so that the statute provided that

[t]he members of the police department on the active list of any city at the time of their appointment under this part may not be less than 18 years of age or more than 35 years of age . . . .

See § 7-32-4112(1), MCA (1979), as amended by 1979 Mont. Laws Ch. 263, Sec. 8. This is the version of § 7-32-4112(1), MCA, which was in effect in 1991 when Ross requested information from the City regarding employment as a city police officer.

¶24. As discussed above, when the Legislature enacts or amends statutes, it is presumed to have acted with deliberation and with full knowledge of all existing laws relating to the subject addressed. London Guaranty & Accident Co., 82 Mont. at 310, 266 P. at 1105; Holly, 172 Mont. at 426, 564 P.2d at 1305-06; Fletcher, 124 Mont. at 119, 220 P.2d at 486-87. Furthermore, the general presumption against the implied repeal of a statute is strengthened with regard to the statutory city police officer age restrictions at issue here by the fact that the Legislature amended the age restrictions in § 11-1814, RCM (1947), during the same legislative session it enacted the MHRA. See State ex rel. Charette v. District Court (1939), 107 Mont. 489, 495-96, 86 P.2d 750, 754. As a result, we presume that when the Legislature amended § 7-32-4112, MCA, and its predecessor statutes at various times between 1974 and 1991, it was fully aware of the age discrimination in employment prohibitions contained in the MHRA and, after 1975, in the GCFP, and did not intend that the age discrimination in employment provisions repeal the statutory city police officer age restrictions. See London Guaranty & Accident Co., 82 Mont. at 310, 266 P. at 1105.

¶25. Ross relies on Dolan v. School Dist. No. 10, Deer Lodge Cty. (1981), 195 Mont. 340, 636 P.2d 825 and Taylor v. Dept. of Fish, Wildlife & Parks (1983), 205 Mont. 85, 666 P.2d 1228, however, in arguing that § 7-32-4112(1), MCA, was impliedly repealed because it contains no express language bringing its maximum age restriction within the purview of the age discrimination exceptions in the MHRA and the GCFP. In Dolan, we concluded that § 20-4-203(2), MCA (1977), which mandated teacher retirement at age 65, was impliedly repealed by the MHRA because the

mandatory retirement provision permitted discrimination in employment based solely on age without including any qualifying or justifying language which would bring the provision within the scope of the exceptions contained in the MHRA. Dolan, 195 Mont. at 347-48, 636 P.2d at 829. In Taylor, we came to a similar conclusion regarding § 19-8-601(2), MCA (1979), which required game wardens to retire at the age of 60. Taylor, 205 Mont. at 93, 666 P.2d at 1232.

¶26. Although Ross is correct in her assertion that § 7-32-4112, MCA (1989), is similar to the statutes addressed--and held impliedly repealed--in Dolan and Taylor, we observe that neither of those cases addressed the effect of concurrent and subsequent legislative amendments, if any, to the statutes at issue. In light of our discussion above regarding the legislative amendments to § 7-32-4112(1), MCA, and its predecessors, we conclude that Dolan and Taylor are distinguishable.

¶27. We conclude that the city police officer age restriction contained in § 7-32-4112 (1), MCA (1989), is not irreconcilably in conflict with or repugnant to the provisions of the MHRA or the GCFP and that the Montana Legislature did not intend to effect a repeal of that statute by the enactment of the anti-discrimination in employment laws. We hold, therefore, that the District Court did not err in concluding that § 7-32-4112(1), MCA (1989), was not impliedly repealed by the enactment of the MHRA and the GCFP.

¶28. 2. Did the District Court err in concluding that, even assuming § 7-32-4112(1), MCA (1989), is unconstitutional, the City cannot be held liable for relying on the statute and in granting the City summary judgment on that basis?

¶29. Ross also argued in the District Court that the City could not rely on § 7-32-4112 (1), MCA (1989), to justify the age restriction in its city police officer qualifications because the statute violates the equal protection clauses of the Montana and United States Constitutions. The City argued to the contrary, but also contended that, even if § 7-32-4112(1), MCA, were unconstitutional, the City was immune from liability pursuant to § 2-9-103, MCA.

¶30. The District Court declined to address the constitutionality of § 7-32-4112(1), MCA (1989), based on its conclusion that, even if the statute is unconstitutional, the City is protected from liability for relying on the statute by § 2-9-103, MCA. Ross

reasserts her arguments--raised below but not addressed by the District Court--regarding the constitutionality of § 7-32-4112(1), MCA (1989), and also advances several arguments in support of her contention that § 2-9-103, MCA, does not shield the City from liability in this case. We follow the District Court's lead in declining to address the constitutionality of § 7-32-4112(1), MCA (1989), because we conclude for the reasons set forth below that, even assuming the statute is unconstitutional, the City is immune from liability under § 2-9-103, MCA.

¶31. Section 2-9-103(1), MCA, provides that

[i]f an officer, agent, or employee of a governmental entity acts in good faith, without malice or corruption, and under the authority of law and that law is subsequently declared invalid as in conflict with the constitution of Montana or the constitution of the United States, neither he nor any other officer or employee of the governmental entity he represents nor the governmental entity he represents is civilly liable in any action in which he, such other officer, or such governmental entity would not have been liable had the law been valid.

Assuming *arguendo*, then, that § 7-32-4112(1), MCA (1989), is unconstitutional, the City appears to be immune from liability for acting in reliance on a statute later declared constitutionally invalid unless it did not act in good faith and without malice or corruption.

¶32. Ross makes no argument here that the City was not acting in good faith when it relied on the provisions of § 7-32-4112, MCA (1989), to justify the maximum age restriction in its police officer qualification criteria. Nor does she argue that the City acted with malice or corruption.

¶33. Ross does argue, however, that § 2-9-103, MCA, is applicable only to "tort claims" and cannot be applied in claims brought under the MHRA and the GCFP. In essence, she contends that, because this statute is found in Title 2, Chapter 9 of the Montana Code Annotated, commonly referred to as the Montana Tort Claims Act (the Act), it only can be applied to claims brought pursuant to the Act. However, § 2-9-103(1), MCA, by its terms, clearly applies to *any action* brought against a governmental entity or its officers, agents and employees. If the Legislature had intended to limit the application of § 2-9-103(1), MCA, to claims brought pursuant to the Act, it could and would have used the word "claim"--which is specifically defined

for purposes of the Act in § 2-9-101(1), MCA--within the statute. We conclude that the immunity from liability contained in § 2-9-103(1), MCA, is not limited to claims brought pursuant to the Act, but applies in any action brought against a governmental entity and its officers, agents and employees.

¶34. Ross next argues that § 2-9-103(1), MCA, is itself unconstitutional because it denies full legal redress to injured parties as guaranteed by Article II, Section 16 of the Montana Constitution. We have held, however, that Article II, Section 16 of the Montana Constitution does not guarantee a fundamental right to any particular cause of action or remedy and that the Legislature has the power to alter or abrogate previously available causes of action and constrict liability. See generally Meech v. Hillhaven West, Inc. (1989), 238 Mont. 21, 776 P.2d 488. Ross does not request us to revist Meech. Rather, conceding that Meech so holds, Ross asserts that an important factor in that case was that, in enacting the Wrongful Discharge from Employment Act (WDEA), the statutory scheme at issue in Meech, the Legislature had created a statutory cause of action to replace the common law causes of action it had abrogated. See Meech, 238 Mont. at 50-52, 776 P.2d at 505-07. She argues therefrom that § 2-9-103(1), MCA, is not constitutional under the Meech analysis because the statute has taken away a remedy for persons injured by unconstitutional actions without substituting another remedy in its place.

¶35. It is true that, in Meech, we discussed the fact that the Legislature had substituted one remedy for another. Meech, 238 Mont. at 50-52, 776 P.2d at 505-07. That fact was not central to our holding that the WDEA did not deny full legal redress within the meaning of Article II, Section 16 of the Montana Constitution, however. Indeed, we specifically stated that we were not addressing the question of whether such a substitution of remedies was necessary to meet constitutional requirements. Meech, 238 Mont. at 43, 776 P.2d at 501.

¶36. Thus, contrary to Ross' assertion, Meech does not support her argument that § 2-9-103, MCA, denies full legal redress because the Legislature has taken away a remedy without providing a substitute remedy. Nor does Ross cite to any legal authority which does support that argument. The party challenging the constitutionality of a statute must prove that the statute is unconstitutional beyond a reasonable doubt. Zempel v. Uninsured Employers' Fund (1997), 282 Mont. 424, 428, 938 P.2d 658, 661. We conclude that Ross has failed to prove that § 2-9-103, MCA, violates Article II, Section 16 of the Montana Constitution beyond a reasonable

doubt.

¶37. Ross also argues that § 2-9-103, MCA, is unconstitutional because it violates her right to equal protection of the laws by "treat[ing] those victims of governmental action differently than victims of private torts . . . ." Her argument in this regard is not altogether clear, intertwined as it is with her Article II, Section 16 argument. It appears, however, that she again posits that Meech requires the Legislature to substitute a new cause of action or remedy when it abrogates an old one and contends that its failure to do so in this instance constitutes a denial of equal protection of the laws for persons injured by unconstitutional actions of governmental entities. As discussed above, Ross' reliance on Meech for the proposition that the Legislature must provide replacement causes of action or remedies when it abolishes former ones is misplaced. Moreover, as was true above, she cites to no other authority for her argument here. We conclude, therefore, that Ross has failed to prove beyond a reasonable doubt that § 2-9-103, MCA, unconstitutionally denies equal protection of the laws to persons injured by governmental acts.

¶38. Ross advances no other argument in support of her contention that § 2-9-103(1), MCA, would not shield the City from liability in this case if § 7-32-4112(1), MCA (1989), is unconstitutional. As a result, assuming *arguendo* that § 7-32-4112(1), MCA (1989), is unconstitutional, the City would have acted in reliance on a statute which was "subsequently declared invalid as in conflict with the constitution of Montana or the constitution of the United States . . ." when it informed Ross that there was a maximum age restriction in its police officer qualifications and it would be immune from liability under § 2-9-103(1), MCA. Consequently, we hold that the District Court did not err in concluding that, even if § 7-32-4112(1), MCA (1989), is unconstitutional, the City cannot be held liable for relying on the statute and in granting the City summary judgment on that basis.

¶39. Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.