IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 08-0233

2008 MT 223

_____

TIMOTHY D. ALKIRE,

       Petitioner,

     v.

MUNICIPAL COURT, CITY OF MISSOULA,
KAREN TOWNSEND, Acting Municipal Court
Judge,

       Respondents.

                          O P I N I O N

                          A N D

                          O R D E R

_____

¶1     Before this Court is a Petition for Writ of Supervisory Control filed by petitioner Timothy D. Alkire (Alkire). Alkire is represented by the Office of the State Public Defender (OSPD). Pursuant to our Order dated May 21, 2008, the respondents, the Municipal Court, the City of Missoula, and Karen Townsend, Acting Municipal Court Judge (the court) have responded through the Missoula City Attorney's Office.

¶2     Alkire is charged in Missoula Municipal Court with criminal trespass to vehicles. Since it is undisputed that Alkire is deaf or suffers from serious hearing impairments, he requires an interpreter.

¶3     From the record before us it appears that on October 31, 2007, the court entered an order on motions made by Alkire. One motion was to appoint a "team of qualified interpreters." The court observed that with this motion, Alkire provided the court with "a

1

paper setting out standard practice for interpreters for the deaf.[1]" The court's order states: "That document [the aforementioned paper of standard practices for interpreters] provides the Court with necessary evidence that a team of interpreters is necessary for any trial held in this case." The court then went on to note that because a team of interpreters is necessary, that does not settle the question of who should pay the cost for this team of interpreters. The court reasoned that § 47-1-201(5)(a), MCA,[2] clearly applies, and, as the most recently enacted statute on the matter of appointing interpreters (it was enacted in 2005), that statute controls over § 49-4-503, MCA, which was enacted in 1979. Because § 47-1-201(5)(a), MCA, was enacted more recently, the court held that it "no longer has the financial responsibility for interpreters requested by the public defender," notwithstanding § 49-4-503, MCA, which provides that the county bear such costs. The court also ruled that § 47-1-201(5)(a), MCA, was the more specific statute, and that it controlled over the earlier and more general legislation, § 49-4-503, MCA.

¶4 On that rationale the court granted Alkire's motion for appointment of a team of qualified interpreters. And, pursuant to § 47-1-201(5)(a), MCA, the court also ordered that the OSPD be responsible for all costs associated with the appointment of this team of qualified interpreters. On April 2, 2008, the court reaffirmed this same rationale in its October 31, 2007 order denying Alkire's renewed motion that the Missoula Municipal Court bear the financial responsibility for payment of the needed interpreters for Alkire's

---

[1] It appears that an interpreter for the deaf is only able to work an hour at a time, hence the need for a "team."
[2] Section 47-1-201(5)(a), MCA, is one of the statutes enacted in 2005 that created the state-wide public defender system. *See* Title 47, chapter 1, MCA.

2

trial. Again, the court ordered the OSPD to be responsible for such costs under § 47-1-201(5), MCA.

¶5 Alkire contends that the trial judge read § 47-1-201(5), MCA, too broadly, and that § 49-4-503, MCA, applies and requires the court to bear the costs of his team of interpreters.

¶6 The City of Missoula's response is confusing and at odds with the court's actual orders. The City states that "[t]he Missoula Municipal Court will pay for an interpreter for Alkire at the time of trial" and that it is not responsible for the team of interpreters that Alkire has demanded. The City then faults Alkire for failing to request a hearing on his motion and failing to present expert testimony and evidence for his need of a team of interpreters. The City also argues that the Legislature has provided the OSPD with a budget for these sorts of expenses.

¶7 The City's argument is beside the point, however. In its October 31, 2007 order (reaffirmed in its April 8, 2008 order) the court clearly accepted the proof that Alkire offered for his need for a team of interpreters and, on the basis of that proof, granted Alkire's motion for the appointment of a team of qualified interpreters. The only issue raised in Alkire's Petition for Writ of Supervisory Control properly before us is which entity is responsible for the payment of this team of interpreters. That Alkire is entitled to a team of interpreters—as opposed to one interpreter—was settled by the court already.

¶8 Accordingly, we turn to the two statutory schemes at issue. The first statutory scheme is under Title 49, chapter 4, part 5, MCA. This statutory scheme provides for "Interpreters for the Deaf in Official Proceedings" (hereafter referred to as scheme no. 1).

3

Specifically, § 49-4-503(1) and (3)(a), MCA, require the court to appoint an interpreter for a deaf person who is involved in a court proceeding. Section 49-4-509, MCA, requires the court to pay the interpreter reasonable compensation for his services plus his actual travel and transportation expenses. Moreover, and of importance here, this section provides that "[w]hen the interpreter is appointed in a criminal proceeding, the fee shall be paid out of the county general fund . . . ."

¶9 The second statutory scheme arises as a combination of § 47-1-201(5)(a); Title 26, chapter 2, part 5; and § 46-15-116, MCA (hereafter referred to as scheme no. 2). Section 47-1-201(5)(a), MCA, provides that the OSPD is responsible for "witness and interpreter fees and expenses provided for in Title 26, chapter 2, part 5, and 46-15-116." Title 26, chapter 2, part 5, MCA, deals with "Witness Fees." Under § 26-2-504, MCA, interpreters and translators receive the same compensation as witnesses ($10 per day). Furthermore, under § 26-2-506(2)(a), MCA, witnesses subpoenaed by the public defender must be paid by the public defender under § 47-1-201(5), MCA. Pursuant to § 46-15-116(1), MCA, witnesses in criminal proceedings are paid the witness fees prescribed under Title 26, chapter 2, part 5, MCA.

¶10 As noted, the trial court reasoned that statutory scheme no. 2 controls since § 47-1-201(5), MCA, was enacted in 2005, whereas § 49-4-503, MCA, was enacted in 1979, and, because the Legislature was presumptively aware of statutory scheme no. 1, statutory scheme no. 2 is more specific and, thus, controls. We disagree.

¶11 We conclude that the trial court's interpretation is incorrect for two reasons. First, the trial judge's interpretation effectively concludes that the Legislature implicitly

4

repealed statutory scheme no. 1 when the deaf criminal defendant is indigent and has been appointed a public defender. In *Ritchie v. Town of Ennis*, 2004 MT 43, 320 Mont. 94, 86 P.3d 11, we stated that

> the Legislature is presumed to act with knowledge of existing law. *Ross* [*v. City of Great Falls*, 1998 MT 276, ¶ 17, 291 Mont. 377, ¶ 17, 967 P.2d 1103], ¶ 17. Accordingly, it is further presumed that the Legislature "does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable." *Ross,* ¶ 17 (citation omitted). As a result, a statute may be repealed by implication when a subsequent legislative act is "clearly and irreconcilably inconsistent with the earlier statute." *Ross,* ¶ 16. Due to these presumptions, repeal of a statute by implication is not favored. *Ross,* ¶ 17.

*Ritchie*, ¶ 20; *accord Dayberry v. City of East Helena*, 2003 MT 321, ¶ 28, 318 Mont. 301, ¶ 28, 80 P.3d 1218, ¶ 28. Second, the trial court's interpretation fails to reconcile the two statutory schemes where it is possible to do so, as is required by § 1-2-101, MCA. *Accord Mathews v. BJS Construction, Inc.,* 2003 MT 116, ¶¶ 24-25, 315 Mont. 441, ¶¶ 24-25, 68 P.3d 865, ¶¶ 24-25.

¶12 We conclude that statutory scheme no. 1 is the specific statutory scheme as it pertains to providing an interpreter for a *deaf* person in a criminal proceeding. This statutory scheme controls general statutory scheme no. 2 which pertains to the appointment of interpreters and translators generally and who are treated as witnesses. Under statutory scheme no. 1, the court must appoint an interpreter for a deaf person in a criminal proceeding and the county general fund bears the cost. In this regard, interpreters for deaf persons (scheme no. 1) are paid differently than are other interpreters and translators (scheme no. 2)—i.e., "reasonable fees" and actual expenses versus $10 per day, respectively. As noted, Title 49, chapter 4, part 5 (scheme no. 1) is entirely devoted to deaf person's participation in court and administrative proceedings.

5

Interpreters for the deaf appointed under Title 49, chapter 4, part 5 are not treated simply as "witnesses" as they are in scheme no. 2.

¶13 Reconciling both statutory schemes, as we must, we conclude that under statutory scheme no. 2, the OSPD bears the expense of an interpreter or translator, other than an interpreter appointed for a deaf person. Statutory scheme no. 2 interpreters and translators—presumably foreign language interpreters and translators—are deemed to be witnesses and are paid according to § 26-2-506(2)(a), MCA. On the other hand, interpreters for the deaf—in this case Alkire's team of interpreters—are paid under the specific statutory scheme pertaining to interpreters for deaf persons in criminal proceedings. As noted, § 49-4-509, MCA, requires that an interpreter for the deaf receive a "reasonable fee," as determined by the appointing authority, for his services together with his actual expenses for travel and transportation. Moreover, this statute provides that in a criminal proceeding the fee is paid out of the country general fund.

¶14 This interpretation avoids the implicit repeal of § 49-4-503(1) and (3)(a), MCA, that the trial court's interpretation presupposes. Moreover, this interpretation gives effect to both statutory schemes. Interpreters for the deaf are covered under statutory scheme no. 1—Title 49, chapter 4, part 5. Other interpreters and translators—again, presumably foreign language translators and interpreters—are covered under statutory scheme no. 2—§ 47-1-201(5)(a); Title 26, chapter 2, part 5; and § 46-15-116, MCA. Interpreters of the deaf are paid according to § 49-4-509, MCA, and other interpreters and translators are paid according to § 47-1-201(5)(a), MCA.

6

¶15 On this rationale, we hold that the court erred as a matter of law in its interpretation of the statutes at issue and that it is, thus, proceeding under a mistake of law. We also hold that requiring the OSPD to bear the expenses of Alkire's team of interpreters in the face of a statutory scheme that specifically requires such expenses and costs to be paid from the county general fund is a gross injustice. The City Attorney argues that, in this cause, appeal is an adequate remedy. While that argument may have some merit, we also observe that the facts here are not in dispute and the issue presented is purely one involving the interpretation of statutory law over which our review is de novo. *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, ¶ 10, 179 P.3d 534, ¶ 10 (citations omitted). Since this question of law is one of first impression—occasioned by the enactment of the public defender statutes—and, since this is a matter the Legislature may wish to address further in the 2009 session, we conclude that supervisory control will more expeditiously resolve this question than will an appeal process involving two layers of appellate review. Therefore,

¶16 IT IS ORDERED that Alkire's Petition for Writ of Supervisory Control is GRANTED.

¶17 IT IS FURTHER ORDERED that the court's October 31, 2007, and April 8, 2008 orders are REVERSED. This matter is remanded to the Missoula Municipal Court for further proceedings consistent with this Opinion and Order.

¶18 IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Opinion and Order to counsel of record and to the Hon. Karen Townsend, Acting Judge, Presiding.

Dated this 18th day of June, 2008.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS